# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| BRENDA TIDWELL, | * | |
| | * | |
| Claimant, | * | |
| | * | |
| vs. | * | CASE NO. 5:04-CV-138 GMF |
| | * | |
| JO ANNE B. BARNHART, | * | |
| COMMISSIONER OF | * | |
| SOCIAL SECURITY, | * | |
| | * | |
| Defendant. | * | SOCIAL SECURITY APPEAL |

_____

## **ORDER**

On February 25, 2005, this Court entered a Judgment in favor of the Plaintiff. (R-15). On March 11, 2005, the Commissioner filed a Motion to Alter Judgment. (R-16). Claimant Tidwell filed a Response on March 14, 2005. (R-17). The Commissioner filed a Reply to Claimant's Response on March 22, 2005. (R-18). On March 24, 2005, Claimant filed a Motion to Supplement her Response and such was granted March 25, 2005. (R-20). Both parties previously filed their written consent for all proceedings to be conducted by the United States Magistrate Judge, including the entry of a final judgment directly appealable to the Eleventh Circuit Court of Appeals pursuant to 28 U.S.C. § 636(c)(3).

**I.  Use of term "often" versus "moderate"**

20 C.F.R. §416.920a is the statute that explains the evaluation of mental impairments under the Social Security Disability system.  The 2000 version of 20 C.F.R. §416.920a(b)[1], discusses the "use of the procedure to record pertinent findings and rate the degree of functional loss."  If a mental impairment is found to exist, 20 C.F.R. §416.920a(b)(3) requires the "degree of functional loss resulting from the impairment(s)" be rated.

> Four areas of function considered by us as essential to work have been identified, and the degree of functional loss in those areas must be rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform those work-related functions. For the first two areas (activities of daily living and social functioning), the rating of limitation must be done based upon the following five point scale: None, slight, moderate, marked, and extreme.  For the third areas (concentration, persistence or pace) the following five point scale must be used: Never, seldom, often, frequent, and constant.  For the fourth area, (deterioration or decompensation in work or work-like settings), the following four point scale must be used: Never, once or twice, repeated (three or more), and continual.  The last two points for each of these scales represents a degree of limitation which is incompatible with the ability to perform the work-related function.

Id.

The 2001 version of 20 C.F.R. §416.920a changed somewhat and the mental impairment point scales were modified and moved to subsection (c)(4).[2]  This subsection states:

---

[1] Revised as of April 1, 2000.

[2] Revised as of April 1, 2001.

> When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Id.[3]  Thus, the word "moderate," in the third position on the five point scale, replaced the word "often," on April 1, 2001. What the Commissioner is arguing, is simple semantics. Herein, the word choice does not change anything. Whether the term "moderate" or "often" is used in the question to the vocational expert, is inconsequential. Both terms were in the third place on the five-point scale, and either way, the third position would still present a calculation of difficulty with concentration, persistence, or pace 26 to 50 percent of the time. Contrary to the Commissioner's statement, it is clear from 20 C.F.R. §416.920a(d) that "moderate" and "often" mean the same thing.[4]  (R-16).

## II.  Use of a Psychiatric Review Technique finding in an RFC assessment

Social Security Ruling (S.S.R.) 96-8p (July 2, 1996) states:

> 1.  Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A "regular and continuing basis"

---

[3] The 2004 version of 20 C.F.R. §416.920a(c)(4) is identical to the 2001 version.

[4] In the prior Order, this court mistakenly listed Ms. Tidwell's claim as one of Disability instead of Supplemental Income.  The proper code section regarding mental evaluations under S.S.I. is 416.920a.  The Court listed 404.1520a, which deals with mental evaluation under S.S.D..  However, as the two code sections are identical in language, consider this notice of substitution of C.F.R. 416.920a for 404.1520a in the prior Order of this Court.

>means 8 hours a day, for 5 days a week, or an equivalent work schedule.
>2. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms....
>4. The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy....

1996 WL 374184 (S.S.A.). This regulation explains the relation of the psychiatric review technique in the policy interpretation, which follows the rule itself.

>The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjuducators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

*Id* at 4. SSR 96-8p then discusses the evidence to be considered:

>The RFC assessment must be based on all of the relevant evidence in the case record, such as: Medical history; Medical signs and laboratory findings; The effects of treatment,

>including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication); Reports of daily activities; Lay evidence; Recorded observations; Medical source statements; Effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; Evidence from attempts to work; Need for a structured living environment; and Work evaluations, if available.
>
>   The adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone.
>
>   In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of the claim.

*Id* at 5. The Commissioner stated that "Plaintiff's use of the findings from the *Psychiatric Review Technique Form* as a residual functional capacity finding in his hypothetical question to the VE was inappropriate." (Commissioner's Motion to Alter or Amend Judgment, p.8). The statement the Commissioner refers to is a question by Plaintiff's counsel to the VE regarding "concentration, persistence, or pace" and how that would effect Claimant's ability to work. This argument is absurd. The notes after SSR 96-8p clearly state that "the RFC assessment must be based on **all** of the relevant evidence in the case record"and then gives specific examples, including: medical source statements (such as those of Drs. Carter and Hinson in the PRTF), side effects of medication (such as Claimant's stated problems with

concentration and reading), and reports of daily activities (Claimant's stated need, confirmed by her mother's statement, to take a nap every morning after taking her medication).

As the Claimant correctly notes in both her 2001 and 2004 briefs, when an ALJ fails to properly reject Claimant's subjective allegations, they must be accepted as true as a matter of law. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). As stated in the original order:

> Contrary to the ALJ's Findings, a lay person indicating that they quit their job because of uncontrollable crying spells and later calling the same collective episodes a "nervous breakdown" does not necessarily indicate that a claimant is dishonest or exaggerating. (R-290). The ALJ further states that Claimant is exaggerating because she was not treated for a "nervous breakdown...[r]ather the claimant was diagnosed in 1997 with Somatization disorder and a schizoid personality disorder." (R-290). First of all, "nervous breakdown" is a lay term defined as "a nonmedical term for an emotional or a mental illness; often a euphemism for a psychiatric disorder." *Stedman's Medical Dictionary* supra. The record clearly indicates that Claimant sought psychiatric treatment in 1991 from Macon/Bibb County Mental Health shortly after she left her job and was still "bursting into tears" and depressed at least seven months into treatment. (R-157-158). Thus, rather than indicating dishonestly or exaggeration, it appears the claimant had a better understanding of the term than the ALJ and was quite forthright with her mental disorders and the treatment she has received. Therefore, the ALJ finding that this constituted a lack of candor on the part of Claimant and "undermined her subjective complaints to some extent" and therefore entitled the ALJ to give her contentions reduced evidentiary weight (R-290), is an incorrect application of the law and Claimant is therefore entitled to be found fully credible as to her subjective complaints.

(Order at p. 17-18). Therefore, Claimant's subjective allegations must be accepted as true.

### Conclusion

As stated in the original Order, the burden shifted to the Commissioner to show that other work exists in significant numbers in the national economy which would accommodate Claimant's residual functional capacity and vocational factors once the ALJ determined that Claimant could not perform her past relevant work. The Commissioner failed to do so, thus necessitating this Court's remand for the award of benefits. This court finds that Claimant Tidwell has established that she is disabled without a doubt.

**WHEREFORE**, **IT IS ORDERED** that the Commissioner's Motion to Alter or Amend the Judgment is hereby **DENIED** and this case is **REMANDED** with instructions that the case be returned to the Commissioner for the award of benefits to Claimant.

**SO ORDERED**, this 21st day of April, 2005.

mZc
S/ G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE